Vicki Marolt Buchanan.
State Bar No. 153318
19201 Sonoma Highway, No. 243
Sonoma, California 92660
Telephone: (707) 343-1907
Facsimile: (707) 343-1771
vickimaroltbuchananpc@gmail.com

Attorney for Defendant/Appellant
PAUL H. RICHARDS, JR.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: CR 04-1416-RGK |
| Plaintiff, | NOTICE OF MOTION AND MOTION TO VACATE JUDGMENT AND FOR RELEASE FROM CUSTODY PENDING FURTHER PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF COUNSEL. |
| v. | |
| PAUL H. RICHARDS, JR. | |
| Defendant | DATE: September 13, 2010 |
| | TIME: 1:30 p.m. |

TO: UNITED STATES ATTORNEY ANDRE BIROTTE, JR. AND ASSISTANT

UNITED STATES ATTORNEY BRUCE H. SEARBY:

PLEASE TAKE NOTICE that on September 13, 2010, at 1:30 p.m., or as soon thereafter

as the matter can be heard, in the Courtroom of the Honorable R. Gary Klausner,

Courtroom 850, 255 E. Temple Street, Los Angeles California 90012, Defendant Paul H.

Richards, Jr. will move to vacate the judgment and commitment order and move for

immediate release from the custody of the Bureau of Prisons.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MOTION

Paul H. Richards, Jr., by and through his appellate attorney, Vicki Marolt Buchanan, hereby moves this Honorable Court to vacate the judgment and commitment order dated March 23, 2006 and order Richards' immediate release from the Bureau of Prisons pending further proceedings in this court.

Dated: August 9, 2010                    Respectfully submitted,


                                                 s/ Vicki Marolt Buchanan
                                                 Attorney for Paul H. Richards, Jr.

# TABLE OF CONTENTS

Table of Authorities ................................................................................................4

Introduction..........................................................................................................6

Procedural Background ........................................................................................6

Bail Status............................................................................................................7

Memorandum of Points and Authorities ..............................................................7

I.     The United States Supreme Court Has Determined the Honest Services Fraud
       Scheme Alleged in the Indictment and Upon Which Richards Was Convicted
       Does Not Violate the Honest Services Fraud Statute.............................................7

       A.     Invalid Honest Services Fraud Counts ......................................10

       B.     Counts Relying on the Invalid Honest Services Fraud Counts..................11

       C.     Counts that Do Not Rely Directly on the Invalid Honest Services Fraud
              Counts, but Which Were Tainted by the Allegations, Evidence, and
              Argument Related to the Invalid Honest Services Fraud Scheme .............12

II.    The Sentence and Restitution Order Were Based on the Invalid Honest Services
       Fraud Counts. .................................................................................................15

III.   Given the Fact Richards Has Successfully and Productively Served Years in
       Excess of Any Sentence He Might Receive from Any Count, Which Might
       Survive, Richards Should be Released Immediately from the Custody of the
       Bureau of Prisons ...........................................................................................16

Conclusion       ....................................................................................................19

Declaration of Vicki Marolt Buchanan ........................................................20

Certificate of Service...........................................................................................21

# TABLE OF AUTHORITIES

**Cases:**

*Hedgpeth v. Pulido*, 129 S.Ct. 530 (2008) ...................................................................... 12

*Neder v. United States*, 527 U.S. 1, 7 (1999) ................................................................. 12

*Skilling v. United States*, 561 U.S. __, 2010 WL 2718587 ........................................... 7, 8

*United States v. Bordalla*, 857 F.2d 519 (9th Cir. 1988) ................................................. 13

*United States v. Epis*, 373 F.3d 1383 (9th Cir. 2004) ..................................................... 16

*United States v. Fulbright*, 105 F.3d 443 (9th Cir. 1997) ............................................... 11

*United States v. Murphy*, 323 F.3d 102 (3d Cir. 2003) ................................................... 14

*United States v. Pelullo*, 14 F.3d 881 (1994) ................................................................. 14

*United States v. Rooney*, 37 F.3d 847 (2d Cir. 1994) ...................................................... 13

*Weyhrauch v. United States*, 2010 WL 2518696 .............................................................. 7

*Yates v. United States*, 354 U.S. 298, 77 S.Ct 1064, 1 L.Ed.2d 1356 (1957) .................. 11

**Statutes:**

18 U.S.C. § 1001 ......................................................................................................... 5, 12

18 U.S.C. § 1341 ......................................................................................................... 5, 11

18 U.S.C. § 1346 ..................................................................................................... 5, 7, 10

18 U.S.C. § 1951 ......................................................................................................... 5, 13

18 U.S.C. § 1956(a)(1) .......................................................................................... 5, 11, 16

18 U.S.C. § 3143(a) .......................................................................................................... 16

**TABLE OF AUTHORITIES – Continued**

**Sentencing Guidelines**

U.S.S.G. § 2B1.1(b)(1)(D). ........................................................17

U.S.S.G. § 2C1.1...........................................................................17

U.S.S.G. §2C1.1(b)(2).................................................................17

## INTRODUCTION

Because a substantial portion of the indictment and conviction in this case was based on honest services fraud allegations predicated on conflicts of interest, nondisclosure of material information, and state law violations, which the United States Supreme Court has now held do not constitute honest services fraud, the judgment in this case must be vacated. Because Paul H. Richards, Jr. has already served more time than he is now facing, he should be released from prison immediately pending further proceedings after remand from the Ninth Circuit Court of Appeals.

## PROCEDURAL BACKGROUND

Paul Richards was indicted on fifteen counts under 18 U.S.C. § 1346 [Honest Services Mail Fraud regarding Allied Government Services and contracts or potential contracts with the City of Lynwood]; four counts under 18 U.S.C. § 1341 [Money-or-Property fraud regarding a contract with Commuter Bus Lines and deceptive campaign flyers]; one count under 18 U.S.C. § 1951 [Interference with Commerce by Extortion Under Color of Official Right with regard to the Commuter Bus Lines contract]; eight counts under 18 U.S.C. § 1956(a)(1) [Money Laundering of funds from the Honest Services and Money-or-Property schemes]; one count under 18 U.S.C. § 1001 [False Statements to the FBI] and five counts 18 U.S.C. §§ 1341 and 1346 [Honest Services Mail Fraud regarding California campaign financing laws]. (Exhibit A - First Superseding Indictment.) On November 1, 2005, the jury returned general verdicts convicting Richards on all counts.

On March 23, 2006, Richards was sentenced to the custody of the Bureau of Prisons for a term of 188 months. Richards appealed his conviction and sentence. One of the issues in his appeal was whether the indictment for honest services fraud was too broad.

In its decision dated February 27, 2009, the Ninth Circuit ruled as follows:

> The defendants next rely on the state law limiting principle of honest services mail fraud, 18 U.S.C. § 1346, to assert that the district court erred

by rejecting their request to strike from the indictment references to "unnecessary and exorbitant" contracts. The challenged clauses alleged conduct on par with nondisclosure of material information, which constitutes a violation of § 1346, even if it was not also a violation of state law. See United States v. Weyhrauch, 548 F.3d 1237, 1247 (9th Cir. 2008). The district court did not abuse its discretion by denying the motion to strike.

(Exhibit B – Ninth Circuit Opinion.)

Richards filed a petition for writ of certiorari on this issue. On June 24, 2010, the United States Supreme Court vacated the *Weyhrauch* decision based on its opinion in *Skilling v. United States* U.S. ___, 2010 WL 2718587. *Weyhrauch v. United States*, 2010 WL 2518696 561. *Skilling* limited the scope of the honest service fraud statute.

On June 29, 2010, the United States Supreme Court granted Richards' petition for writ of certiorari, reversed the Ninth Circuit's judgment, and remanded the case to the Ninth Circuit for further consideration in light of *Skilling*. (Exhibit C - United States Supreme Court Order Dated June 29, 2010.)

Prior to the United States Supreme Court issuing its judgment, the Ninth Circuit entered an order vacating its February 27, 2010 disposition and remanding the matter to this court for further consideration in light of *Skilling v. United States*, 561 U.S. __. (Exhibit D – Ninth Circuit Order.)

## BAIL STATUS

Mr. Richards is in the custody of the Bureau of Prisons serving his previously imposed sentence.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    The United States Supreme Court Has Determined the Honest Services Fraud Scheme Alleged in the Indictment and Upon Which Richards Was Convicted Does Not Violate the Honest Services Fraud Statute.**

In *Skilling*, the United States Supreme Court held that 18 U.S.C. § 1346, honest services fraud, is limited to instances of bribery and kickbacks. *Skilling*, *supra*, at *28. In *Skilling*, the government argued, honest services fraud should also include: "undisclosed

self-dealing by a public official or private employee – i.e., the taking of official action by the employee that furthers his own undisclosed financial interest while purporting to act in the interests of those to whom he owes a fiduciary duty." *Id*. at *28. The Supreme Court rejected this argument. *Id*. at 28-29. This rejected theory was the basis upon which Richards was convicted and sentenced.

The indictment included the following allegations of what the government claimed constituted honest services mail fraud:

INTRODUCTORY ALLEGATONS

…

D.      PUBLIC OFFICIALS' DUTY OF HONEST SERVICES

16.     Lynwood public officials placed themselves in a position of trust with and owed a duty of honest services to Lynwood and its citizens. They were obligated to act as trustees for the citizens, and owed the public a strict adherence to the fiduciary duties of honesty and loyalty. To fulfill their duty to provided honest services, Lynnwood public officials, among other things were obligated to:

a.      act in the best interest of the public, without pursuing their own personal interests;

b.      conduct election campaigning and fund-praising openly and free from fraud and dishonesty;

c.      take no official action on any matter in which they might have a direct or indirect financial interest without first disclosing any such interest to the public; and

d.      abide by the laws of the United States, the laws of the State of California, and the laws of the City of Lynwood.

…

(Exhibit A at p. 5.)

Counts One Through Twenty
[18 U.S.C. §§ 1341, 1246, and 2]

A. THE FRAUDULENT SCHEME

Beginning at least in or about January 2000 and continuing to at least in or about September 2003, in Los Angeles County, within the Central District of California, and elsewhere, defendants PAUL H. RICHARDS II, PAULA CAMEO HARRIS, BEVAN ATLEE THOMAS, and unindicted co-schemer J.N., aided and abetted by each other and other persons known and unknown to the Grand Jury, devised, intended to devise, and knowingly participated in a scheme and artifice (a) to obtain money and property by means of false and fraudulent pretenses, representations, promises, and material omissions; and (b) to deprive the City of Lynwood and its citizens of their right to defendant RICHARDS' honest services, including:

1.      Their right to impartial, disinterested decision-making by defendant RICHARDS;

2.      Their right to be informed of all relevant facts and circumstances concerning potential sources of influence on defendant RICHARDS as a member of the Lynwood City Council;

3.      Their right to be informed of all relevant facts and circumstances concerning contributions, receipts, and expenditures in election campaigns in the City of Lynwood;

4.      Their right to defendant RICHARDS' honesty and loyalty including their right to have RICHARDS represent their interests, instead of the interests of RICHARDS and his friends and family;

5.      Their right to have defendant RICHARDS cast votes free from disqualifying conflicts of interest; and

6.      Their right to have defendant RICHARDS approve the expenditure of public funds for the public benefit, not on unnecessary and exorbitant contracts that secretly and unjustly enrich and benefit his family, his friends, and himself, at the expense of the City of Lynwood.

(Exhibit A at pp. 10-11.)

On the first day of trial, the government reiterated the case was all about conflicts of interest:

… Mr. Richards participated in the votes in which the question of whether the contracts should be terminated or not took place. His participation in the votes is, without disclosing his conflicts of interest, is the issue that the

government has alleged in the indictment.… The key point here is that Mr. Richards is continuing to participate in conflicted decisions taken by the city counsel relating to these contracts. He's attempting, he's attempting to vindicate the contracts and to carry out the scheme through defending those contracts in city council and furthering litigation against the city. [¶] He's conflicted. He, given his interests, cannot legally participate in those decisions. That's the point.… Your Honor, first of all, there are various counts alleged in he indictment that relate to the mailings of pieces of mail and part of the mail fraud scheme that take place during the litigation phase of these contracts. So this is part and parcel of the mail fraud scheme and the counts that have been charged by the grand jury."

(Exhibit E – Transcript from September 20, 2005 hearing, pp. 21-23.) In summing up its theory of the case before the jury, the government focused on the invalid honest services fraud theory:

What is the public's right to honest services? As charged in the indictment, it includes acting – and official needs to act for the public interest, not their personal interest. There needs to be disclosure of material information, information that will matter in the decision-making process of Government. There needs to be honest campaign fund-raising. These are all duties that Paul Richards admitted on the stand that he understood he had as an elected official and no secret unjust enrichment of yourself or others with the public money. That's part of your duty of honest services. You can't just give away the city's money to your friends and family and to yourself. Paul Richards admitted he understood all that.

(Exhibit F – Closing Argument October 25, 2010 at p 51.)

Under *Skilling*, the above allegations in the indictment and the government's theory of the case do not constitute honest services fraud and the judgment, which was based on them, must be vacated.

## A.     Invalid Honest Services Fraud Counts.

Counts 1-15, honest service fraud pursuant to 18 U.S..C. 1346, are based on Richard's allegedly undisclosed interest in Allied Government Services, "AGS," and the "unnecessary and exorbitant" contracts Richards procured or attempted to procure through AGS. (Exhibit A at pp. 10-36.) These contracts include the Jackson & Associates nuisance abatement contract, the Commuter Bus Lines consulting contract, and the

Regency billboard contract. As described by the government in closing argument, this is what the government refers to as the AGS scheme. (Exhibit F at p. 49, see also pp. 51-54.)

Counts 35-39 are also honest services fraud claims. The honest services fraud in these counts is based on non-disclosure of facts as well as violations of California election laws. (Exhibit A at 47-53.) Because these counts do not involve allegations of bribery or kickbacks, they do not constitute honest services fraud.

Because Counts 1-15 and Counts 35-39 are based squarely on an improper honest services fraud theory, Richard's conviction on those 20 counts must be vacated.

### B. Counts Relying on an Invalid Theory of Honest Services Fraud.

Counts 22-29 involve money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i). Those counts were based on the "proceeds of a specified unlawful activity, namely, mail fraud in violation of 18 U.S.C. §§ 1341 and 1346." (Exhibit A at pp. 39-40.) As described above, the allegations under section 1346 do not involve illegal activity. Therefore they would not support a conviction for money laundering.

A violation of section 1341 might support such a conviction. Assuming for the sake of this argument, that the 1341 convictions under counts 16-20 for money and property fraud might otherwise stand, because the jury entered general verdicts on Counts 22-29, there is no way to know whether these money laundering convictions were based on a proper or improper basis.

A general verdict may be set aside "where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected." *Yates v. United States*, 354 U.S. 298,312, 77 S.Ct 1064, 1 L.Ed.2d 1356 (1957). As the Ninth Circuit stated in *United States v. Fulbright*, 105 F.3d 443, 451 (9th Cir. 1997), *rev'd on other grounds, United States v. Heredia*, 483 F.3d 913 (9th Cir. 2007)

> Where a jury returns a general verdict that is potentially based on a theory that was *legally impermissible* or *unconstitutional,* the conviction cannot be sustained. *Griffin v. United States,* 502 U.S. 46, 56, 112 S.Ct. 466, 472, 116

L.Ed.2d 371 (1991) (*citing Yates v. United States,* 354 U.S. 298, 77 S.Ct.
1064, 1 L.Ed.2d 1356 (1957) (conviction reversed where one of the
possible grounds for conviction was illegal); and *Stromberg v. California,*
283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931) (conviction reversed
where one of the alternative theories from which the jury chose was
unconstitutional). The rationale for this principle is that jurors, as non-
lawyers, cannot be expected to eliminate the legally impermissible option.

*Id*. at 451 (original emphasis).

Such errors are subject to the harmless error review. *Hedgpeth v. Pulido*, 129 S.Ct.

530 (2008). The harmless error test is "whether it appears beyond a reasonable doubt that

the error complained of did not contribute to the verdict obtained. *Neder v. United States*,

527 U.S. 1, 7 (1999) (internal quotations omitted). The government cannot meet this

heavy burden. Accordingly, Counts 22-29 must be vacated.

Another count, which depends on the honest services fraud scheme, is Count 34.

That count involves Richards' allegedly false statement to the FBI in violation of 18

U.S.C. § 1001. (Exhibit A at p. 46.) This count involves an allegedly false statement

regarding the Regency contract. As it turns out, there is nothing illegal about the Regency

contract even though it formed the cornerstone of the government's case and was the

focus of its closing argument. (Exhibit F at pp 9-21.) Therefore, any statements Richards

made to the FBI about the Regency contract were not material.

### C.   Counts that Do Not Rely Directly on the Invalid Honest Services Fraud Count, but Which Were Tainted by the Allegations, Evidence, and Argument Related to the Improper Honest Services Fraud Scheme.

In its closing argument, the government told the jury that the entire case was

because "Paul Richards was not honest, and he violated the trust of those voters who sent

him to office, and he turned the public's business into a family business." (Exhibit F, at p.

6.)

Counts 16-20 for Money and Property Fraud were based on the above premise.

(Exhibit A, pages 36-37.) For instance, Counts 16 - 17 involve sending invoices for work

on the Commuter Bus Lines contract, which was one of the contracts under the honest

services fraud scheme. (Exhibit A at p.36.) Counts 18 -20 involve misrepresentations made in political campaign fliers. All five counts incorporate the "above described [honest services fraud] scheme." (Exhibit A at 36.)

Therefore, these convictions must be vacated because the jury may have been influenced by the improper honest services fraud scheme, which took up 25 pages of the allegations in the indictment and was the focus of the government's closing argument. (Exhibits A and E.) Because most of the allegations and evidence in this case involved the discredited honest services fraud scheme that evidence likely tainted the other counts of conviction and those other counts should be vacated as well. *See, e.g., United States v. Bordalla*, 857 F.2d 519 (9th Cir. 1988) (spillover evidence from count with erroneous instruction required reversal of other counts)*; United States v. Rooney*, 37 F.3d 847, 856 (2d Cir. 1994) (reversing false statements convictions due to risk of prejudicial spillover from evidence that the government introduced on another count for which its theory of guilt was legally flawed). It is questionable whether a jury would have convicted Richards and or the other defendants for sending invoices for services which may or may not have been rendered if the jury did not have in mind the government's claim those contracts were "unnecessary and exorbitant" and Richards was dishonest.

Finally, Count 21 involves extortion in violation of 18 U.S.C. § 1951 regarding Richards' allegedly making Commuter Bus Lines agree to hire AGS as its transportation consultant in exchange for Richards agreeing to allow it to continue to provide transportation services to the City of Lynwood. The Commuter Bus Lines contract was also an integral part of the discredited honest services fraud scheme as described in the indictment. (Exhibit A at pp. 20-23.) This is confirmed in the PSR in paragraph 100 in that, "Count 21 is grouped with Counts 1-20 are grouped together [sic] because the counts involve the same victim and two or more acts or transactions connected by a common criminal object or constituting part of a common scheme or plan." As we now know, Counts 1-15 and the scheme or plan associated with them do not constitute criminal conduct and this count is inextricably intertwined with the honest services fraud

scheme.

*United States v. Murphy*, 323 F.3d 102, 118-22 (3d Cir. 2003) describes how to evaluate spillover evidence:

> The critical factor in any claim of "taint" is the existence of evidence admitted to support the invalid counts that would not be admissible to prove the remaining counts. *United States v. Cross*, 308 F.3d 308, 318 (3d Cir.2002). Only if we find such evidence must we "consider whether the verdict on the remaining count was affected adversely by the evidence that would have been inadmissible at trial limited to that count." *Id.* This requires an inquiry into whether (1) the charges are "intertwined with each other"; (2) the evidence for the remaining counts is "sufficiently distinct to support the verdict" on these counts; (3) the elimination of the invalid count "significantly changed the strategy of the trial"; and (4) the prosecution used language "of the sort to arouse a jury." *Pelullo*, 14 F.3d at 898-99.

*Id.* at 118.

All of the above factors are present in this case. As is clear from the indictment and the argument of counsel, the honest services fraud is the backbone of the entire case and all of the other charges are intertwined with it. For instance, the two non-honest services counts related to the Commuter Bus Lines contract are money and property fraud and extortion. The CBL contract was the starting point of the government's presentation of its case to demonstrate that this was one of several unnecessary and exorbitant contracts. In its closing, the government's reference to the CBL contract was "Let's turn to the Commuter Bus Lines. What the evidence showed, Paul Richards secretly enriching his family and himself…" (Exhibit F at p. 22.) When the evidence is intertwined, jury confusion may occur. *United States v. Pelullo*, 14 F.3d 881, 898 (1994). In this case, we know the jury was confused with the indictment because they requested a simplified version of it.

As to the next requirement, there is no distinct evidence to support a verdict on these CBL counts. Next, if the pages of allegations and the weeks of testimony on the honest services fraud counts were eliminated, the trial strategy would have been

significantly different. There would have been only a few witnesses and they would be restricted to the CBL contract and this contract alone.

Finally, the prosecution used language "of the sort to arouse the jury." Throughout the trial the prosecution reminded the jury over and over again that Richards was dishonest, secretive, conflicted, and corrupt and that the contracts were unnecessary and exorbitant. The government had week after week to drive these ideas into the minds of the jurors.

The convictions for Counts 16-20, 21, and 34 were based on the evidence related to the honest services fraud scheme and such evidence was irrelevant to these charges and tainted the facts and evidence related to these charges. Therefore, the conviction in these counts must be vacated.

## II.   The Sentence and Restitution Order Were Based on the Invalid Honest Services Fraud Counts.

The Pre-Sentence Report used Counts 1-20 as the basis for its calculation of the sentencing guideline range. The honest services fraud scheme was the sole basis used to calculate the loss. Paragraph 113 provided:

> The lawsuits filed by Thomas, Jackson and AGS, however do provide substantial evidence of the defendant's subjective intent with respect to loss. In his lawsuit against the city, Thomas claimed damages of $2,634,580. In her lawsuit, Jackson claimed damages of $585,000. And in its lawsuit, AGS claimed actual damages of $960,000 and consequential damages of $2 million. Richards drafted the original and renewal of the Jackson & Associates contract, and drafted the Thomas & Associates contract. He was also involved with AGS which benefited from the Jackson & Associates contract for nuisance abatement, and had the outdoor advertising contract. Moreover, Richards supported the efforts of Thomas, Jackson and AGS in their lawsuits against the city by encouraging the city to settle. Pursuant to U.S.S.G. § 1B1.3(a)(1)(B), the intended loss from these contracts is attributable to Richards under relevant conduct. Based on the claims in the three lawsuits, the total amount subjectively desired was **$6,179,580.** This amount constitutes the intended loss, and it is greater than the actual loss of $629,220. Under U.S.S.G. § 2B1.1(b)(1)(J), a loss greater than $2.5 million but less than $7 million results in an eighteen-level increase. Since the base offense level under U.S.S.G. § 2C1.7 is ten and an eighteen-level increase for loss is applied, the offense level under that guideline section and base

offense level under U.S.S.G. § 2S1.1(a)(1) is 28.

This Court adopted the PSR's recommendation and increased the sentencing level by 18 points. However, we now know these contracts and the suits to enforce them were not illegal.

Other enhancements were also dependent on the honest services fraud scheme. For instance, the sentencing range was increase 2 points because Richards was convicted under 18 U.S.C. § 1956, i.e. money laundering proceeds from the honest services fraud. (PSR ¶ 114.) Additionally, the sentencing range was increased 4 points because Richards was the leader of the invalid honest services fraud scheme. (PSR ¶ 115.) Finally, he received a 2-point enhancement for lying to the FBI about the Regency contract that was the cornerstone of the government's honest services fraud case. (PSR ¶ 118.)

Likewise, the restitution order in the amount of $787,280.82 was based on the contracts involved in the honest services fraud scheme and the attorney fees the City of Lynwood incurred in defending suits to enforce the contracts. (PSR ¶ 199.) Because the contracts were not illegal, the restitution order must be vacated.

### III. Given the Fact Richards Has Successfully and Productively Served Years in Excess of Any Sentence He Might Receive from Any Counts, Which Might Survive, Richards Should be Released Immediately from Prison.

During the trial of this matter, Richards was free on bail and always appeared. He remained free until he was sentenced. He should be freed again under 18 U.S.C. 3143(a) pending further proceeding including possible re-sentencing. (See, e.g. *United States v. Epis*, 373 F.3d 1383 (9th Cir. 2004) (defendant ordered released on bail pending resolution of issues identified in Court of Appeals in its remand order after a reversal and remand by the United States Supreme Court.)

Much has changed since Richards asked this Court for bail pending his appeal. This Court denied Richard's request stating:

> As to the first prong of the test, the Court finds that, although Defendant dutifully made his court appearance, he has not established by clear and convincing evidence that he is not likely to flee or pose a danger to the

safety of any other person or the community if released. According to the facts, Defendant was the instigator and lead perpetrator of the crimes for which he and his co-conspirators were convicted. Defendant has never expressed remorse, and has remained unrepentant and defiant about his actions. Moreover, in August 2005, after being released on bail pending trial, Defendant was arrested for violations of California Penal Code 647(b) (prostitution). Given the length of his sentence, his prior arrest on bail, and his defiant posture throughout the court proceedings, Defendant's statement that he has never failed to appear in court and has family ties to his District, albeit undisputed, is insufficient to satisfy his burden.

(Exhibit G, District Court order, at p. 2.)

As we now know, the primary charges upon which Richards and the other defendants were convicted are not crimes. When this Court denied Richards' request for bail pending appeal, Richards was facing a 188-month sentence. Richards has now served 53 months of these sentences. The time he has served is much longer than what he now faces.

For the sake of argument, the longest sentence Richards would face would be if Count 21, extortion related to the Commuter Bus Lines contract, survived. Under U.S.S.G. § 2C1.1, the sentencing level would be 10. Under U.S.S.G. §2C1.1(b)(2), the level would be increased by 8 points.[1] Therefore the total level would be 18. At that level, the sentencing range would be 27-33 months. As of the time of the hearing, Richards will have spent 53 months in prison. Therefore, the length of a potential sentence no longer is a factor in determining whether Richards is a flight risk. Richards is not going to flee to avoid a sentence he has already served.

In addition, Richards has had an exemplary record in prison. Richards has spent most of his time at FCI Beaumont in Beaumont, Texas, which is a minimal security facility. (Exhibit H, Declaration of Paul H. Richards.) He served his time there without incident. (Exhibit H at ¶ 3.)

---

[1] An actual loss of $62,250 would increase the level by 6 points under U.S.S.G. § 2B1.1(b)(1)(D). However under U.S.S.G. §2C1.1(b)(2) the applicable increase would be 8 levels because Richards was an elected official.

1
2
3
4
5
6
7
8

Richards developed curricula for Adult Continuing Education courses. (Exhibit H at ¶ 4.) In the four years at Beaumont, he taught over 500 inmates in his classes. (Exhibit H at ¶ 5.) He produced programs and workshops to benefit the inmates related to self-improvement, anti-recidivism, and multi-cultural relations. (Exhibit H at ¶ 6.) Richards produced annual Christmas programs to facilitate parenting between children and their parents during the holidays. (Exhibit H at ¶ 7.) Richards has also been a member of the choir and band and participated in hundreds of services and musical events and conducted weekly Bible studies in his housing unit. (Exhibit H at ¶ 8.)

9
10
11
12
13
14
15
16

All the time Richards has been imprisoned he has continued to maintain strong family ties through calls, letters, and visits. (Exhibit H at ¶ 9.) Although he was in Texas, he has had many visits from his wife and children who have traveled from California to visit. He has talked to his wife on a daily basis. (Exhibit H at ¶ 10.) His wife, Dorothy, is suffering from an eye condition and since 2008 has been declared legally blind. (Exhibit H at ¶ 11-12.) She lives alone and is dependent on others for help. (Exhibit H at ¶ 13.) If Richards were released pending further proceedings, he would be home and available to help her.

17
18
19
20

Given the time Richards has successfully spent in prison and the fact he faces much less time than he has already served, there is no longer any basis to conclude Richards is likely to flee. There never was any evidence he poses a danger to the safety of any other person or the community or society.

21
22
23
24
25
26
27
28

1

**CONCLUSION**

2     Based on the foregoing, Richards respectfully requests that this Court vacate the

3 Judgment dated March 23, 2006 and release him pending further proceedings in this matter.

4 Dated: August 9, 2010                              Respectfully submitted,

5

6                                                    /s/ Vicki Marolt Buchanan

7                                                    _____

8                                                    Vicki Marolt Buchanan
                                                     Counsel for Paul H. Richards II
9                                                    19201 Sonoma Highway
                                                     Sonoma, CA 95476
10                                                   Telephone 707-343-1907

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DECLARATION OF VICKI MAROLT BUCHANAN

I, Vicki Marolt Buchanan, declare:

1.      I am an attorney at law duly licensed to practice law before all courts of the State of California.

2.      I was appointed by the court under the Criminal Justice Act to represent Paul H. Richards, Jr. during his appeal.

3.      I spoke to Associate United States Attorney, Bruce H. Searby, regarding this motion. He opposes the motion.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct to the best of my knowledge.

Dated: August 9, 2010

s/ Vicki Marolt Buchanan
Attorney for Paul H. Richards, Jr.

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is a member of the bar of this court is in good standing and counsel of record for appellant.

The foregoing NOTICE OF MOTION AND MOTION TO VACATE JUDGMENT AND FOR RELEASE FROM CUSTODY PENDING FURTHER PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF COUNSEL in *United States v. Richards,* CR 04-1416-RGK was filed with the Clerk of the Court by using the CM/ECF system on August 9, 2010.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants related to this case are not registered CM/ECF users in this case. I have mailed the foregoing documents by First-Class Mail, postage prepaid within three calendar days to the following:

Kathryn Young, Esq.
Appellate Counsel for Paula Harris
Office of the Federal Public Defender
321 East 2nd Street
Los Angeles, CA 90012-4206

Jerald Brainin
Appellate Counsel for Bevan Thomas
Law Offices
P. O. Box 66365
Los Angeles California, 90066

I declare under penalty of perjury that the foregoing is true and correct, and that this certificate was executed in Sonoma, California on August 9, 2010

/s/ Vicki Marolt Buchanan